GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

EDMUND K. SAFFERY     5860-0
   esaffery@goodsill.com
FOREST B. JENKINS     9761-0
   fjenkins@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

CLEMENT & MURPHY, PLLC

PAUL D. CLEMENT (*phv*)
ERIN E. MURPHY (*phv*)
MATTHEW D. ROWEN (*phv*)
MARIEL A. BROOKINS (*phv*)
706 Duke Street
Alexandria, VA 22314
Telephone: (202) 742-8900

Attorneys for Plaintiff
NATIONAL SHOOTING SPORTS FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>       Plaintiff,<br><br>  vs.<br><br>ANNE E. LOPEZ, Attorney General of the State of Hawaii,<br><br>       Defendant. | No. 1:23-cv-00287-MWJS-RT<br><br>PLAINTIFF'S SUPPLEMENTAL BRIEF<br><br>JUDGE: Hon. Micah. W.J. Smith |

## INTRODUCTION

The law of this Circuit is crystal clear: The Constitution "forbids states from, among other things, 'directly' regulating commercial activity that 'takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.'" *NSSF v. Bonta*, 2024 WL 710892, at *6 (S.D. Cal. Feb. 21, 2024) (quoting *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc)). That venerable constitutional principle dooms Hawaii House Bill 426, just as it doomed the nearly identical California statute on which HB 426 is based.

The AG disputes that HB 426 directly regulates out-of-state conduct and that doing so is unconstitutional. She is wrong on both counts. The text is clear that out-of-state industry members may be held liable under HB 426 for their out-of-state conduct even if they never manufacture, market, or sell anything in Hawaii and even if everything they did was lawful where they did it. As *Bonta* recognized, that is the definition of directly regulating out-of-state conduct, and it is unconstitutional. No court has accepted the AG's strained argument that *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), allows states to hold out-of-state actors liable on the theory that their out-of-state conduct may have contributed, through the acts of remote third parties with whom they never dealt, to some unwanted condition in the state. This Court should not be the first. HB 426 is unconstitutional, and the AG should be enjoined from enforcing it against NSSF and its members.

# ARGUMENT

## I. HB 426 Directly Regulates Out-Of-State Actors' Out-Of-State Conduct.

Under HB 426, a "firearm industry member"—i.e., a "person, firm, … or any other entity … engaged in the manufacture, … marketing, … or … sale of firearm-related products"—must "(1) Establish, implement, and enforce reasonable controls," "(2) Take reasonable precautions to ensure that [it] does not sell, distribute, or provide" any "abnormally dangerous" "firearm-related product[s]" "to a downstream distributor," and (3) "Not engage in any conduct related to the sale or marketing of firearm-related products that is in violation of this chapter." §§134-A, 134-B. Individuals who are not in the business of manufacturing, marketing, or selling firearm-related products cannot be held to violate HB 426, no matter how irresponsibly they may act; HB 426 applies only to "firearm industry member[s]."

Most Hawaii laws—including most involving commerce in firearms—apply only to conduct in Hawaii. Consider, for instance, Hawaii Revised Statute §134-8.5, which makes it a crime for "[a]ny person in this State [to] manufacture[], import[] into the State," or "offer[] … for sale" a "bump fire stock." A licensed retailer in Texas that sold bump stocks in El Paso (before the ATF outlawed them) cannot be held to violate that provision, even if one of its customers later moves to Hawaii and illegally brings a bump stock with him, because the retailer has no Hawaii presence and thus was not a "person in this State" when it "offer[ed]" the bump stock "for sale" to its customer. The same would be true for the licensed manufacturer that

2

made the bump stock in Houston. The only conduct §134-8.5 directly regulates is manufacturing *in Hawaii*, selling *in Hawaii*, and bringing *to Hawaii* certain items. If the industry member does not do any of those things, then it need not fear.

HB 426 is quite different. Unlike §134-8.5 and scores of other laws, HB 426 is not limited to actions in Hawaii by actors in Hawaii. Rather, like the California statute in *Bonta*, HB 426 applies equally to out-of-state actions by out-of-state actors. Indeed, the only in-state connection HB 426 requires comes from the third prong of the definition of "firearm-related product." *See* §134-A (defining "firearm-related product" to mean, *inter alia*, any arm that "is or was possessed in the State and it was reasonably foreseeable that the item would be"). And nothing in that definition (or any other provision) requires the industry member itself to have done anything "in the State." To be sure, it must have been "reasonably foreseeable" that an industry member's *product* would be "possessed in the State" for liability to attach under HB 426. *Id*. But as the AG herself has taken pains to argue, HB 426 does not regulate the products themselves or those who possess them; it regulates the conduct of the industry members who manufacture, market, and sell them. *See* AG.Opp.26. And as the "was possessed in this State" language in the "product" definition makes clear, *see* §134-A, all that matters under HB 426 is that an industry member's *product* finds its way to Hawaii—even if it wound up there via a third party's criminal acts,

3

not any conduct of the industry member, *see* §134-C(g).[1]

The plain text of HB 426 directly regulates out-of-state actions by out-of-state actors.  In fact, as a practical matter, the statute applies almost *exclusively* to out-of-state actions by out-of-state actors, as very few industry members have operations, or even do business, in Hawaii.  There are 130,586 Federal Firearms Licensees ("FFLs") in the United States, but only 220 in Hawaii.  *See Report of Active Firearms Licenses - License Type by State Statistics*, ATF (Dec. 10, 2023), *available at* https://bit.ly/48ZspwC.  And virtually all are retailers, not manufacturers.  *No* major firearm manufacturer operates in the state, and *fewer than 10 firearms* were manufactured in Hawaii in 2021, the most recent year for which such data is available.  *See AFMER 2021 Final Web Report*, ATF, https://tinyurl.com/y94ppsh5 (last visited Mar. 15, 2024).  Hawaii's effort to dictate the terms of manufacturers' conduct thus necessarily will fall almost exclusively on out-of-state actors.

Consider, for example, HB 426's requirement that industry members "[t]ake

---

[1] The "reasonably foreseeable" requirement, *see* §134-A, is unlikely to serve as much of a hurdle to efforts to hold out-of-state actors liable for out-of-state conduct.  For one thing, an "intervening act by a third party, including … criminal use of a firearm-related product, shall not preclude … liability." §134-C(g).  Moreover, Hawaii uses a sliding scale to determine what is "reasonably foreseeable," under which something is more "reasonably foreseeable" the greater the harm that would be caused if it came to fruition.  *Doe Parents No. 1 v. State, Dep't of Educ.*, 58 P.3d 545, 593 (Haw. 2002).  On top of that, a potential future event can be "reasonably foreseeable" under Hawaii law even if it is "highly improbable." *Knodle v. Waikiki Gateway Hotel, Inc.*, 742 P.2d 377, 385 n.7 (Haw. 1987) (citing leading treatise).

reasonable precautions to ensure that [they] do[] not sell, distribute, or provide to a downstream distributor a firearm-related product that is abnormally dangerous." §134-B(b)(2). As to manufacturers, nearly every application of that provision will be to wholly out-of-state conduct. For instance, §134-B(b)(2) by its terms allows the AG to hold manufacturers liable for selling firearms in (say) Texas *that are lawful in Texas* if a Hawaii court concludes that it is "reasonably foreseeable" that one of the firearms would wind up in Hawaii (even if only through the illegal acts of a remote third party) and the product is "likely to create an unreasonable risk of harm to public health and safety in the State." §§134-A, 134-B(b)(2), 134-C(g). Adding insult to injury, HB 426 allows Hawaii courts to *enjoin* out-of-state sales that are lawful where they occur even if their only (abstract) connection to Hawaii is that they kicked off a stream of commerce that ended with a third party unlawfully possessing one in the state. *See* §§134-A, 134-C(d)(1), (g). An out-of-state manufacturer could also seemingly be held liable if it does not rewrite its sales agreements with its out-of-state distributors to require that the latter not sell anything to Hawaii retailers that might later be deemed "abnormally dangerous."[2]

---

[2] As *Bonta* reinforces, NSSF plainly has standing to challenge this provision. *See Bonta*, 2024 WL 710892, at *3-6 (standing to challenge similar provision). Section 134-B(b)(2) outlaws arms "designed … in a manner that is targeted at minors." §134-B(d)(3). NSSF members make and sell many such arms, *see, e.g.*, S&W Decl. ¶15; Henry Decl. ¶¶12-14, which are legal in most states. NSSF members also make and sell detachable pistol magazines that hold more than 10 rounds, which the AG has confirmed §134-B(b)(2) "covers." AG.Opp.33-34; *see* §134-8(c).

5

Section 134-B(b)(1) is, if anything, even more problematic. Under that provision, a manufacturer that "promote[s]" its youth-model rifles on its nationally accessible website risks violating HB 426 even though youth-model rifles are legal in most of the country (and even though it is lawful *in Hawaii* for minors to hunt using firearms), because the statute prohibits "promot[ing] the unlawful … possession … or use of a firearm-related product." §§134-A, 134-B(b)(1). Similarly, a manufacturer could be held liable even if all its manufacturing is in Ohio and all its sales are to FFLs in the Midwest, if a Hawaii court deems it "reasonably foreseeable" that one of its products could wind up in Hawaii. And that is not even the half of it. Imagine that a gang member in Texas breaks into a retailer in Texas and steals a 12-round magazine. If the thief later moves to Oahu and brings it with him, the retailer in Texas could be sued on the theory that it failed to "implement" sufficiently "reasonable procedures" *in Texas* to "[p]revent the … theft of a firearm-related product from the firearm industry member" *in Texas*. §§134-A, 134-B(b)(1).[3]

In short, HB 426 allows Hawaii to impose liability on out-of-state industry members even when they do not manufacture or sell any products in Hawaii or even

---

[3] While *Bonta* held that NSSF lacked standing to challenge a similar provision, 2024 WL 710892, at *4-5, NSSF members are already facing exactly the kinds of suits under similar state laws (beyond just California) that they fear the AG here will use HB 426's "reasonable controls" provision to bring against them, PI.Reply.5, yet the AG has declined to disavow her intention to bring the very same kinds of claims. NSSF has standing to challenge §134-B(b)(1) no less than as to §134-B(b)(2).

intend for their products to wind up in the state. As long as one of the industry member's products winds up in Hawaii and a Hawaii court thinks the industry member could have done more to prevent that outcome, the industry member faces the prospect of Hawaii liability, including having its out-of-state conduct enjoined by a Hawaii court, even if that conduct remains lawful where it occurs.

## II.     Directly Regulating Out-Of-State Conduct Violates The Constitution.

Hawaii's effort to directly regulate out-of-state actors' out-of-state conduct is unconstitutional, just as California's is. *See Bonta*, 2024 WL 710892, at *6-8. Like the California AG, the Hawaii AG insists that *Ross* eliminated the prohibition on direct regulation of out-of-state conduct and rendered only "discriminat[ion] against out-of-state economic interests" verboten. AG.Opp.30. The AG is mistaken. In fact, *Ross* expressly retained the rule that state laws that "*directly* regulate[] out-of-state transactions" exceed "the territorial limits of state authority under the Constitution." 598 U.S. at 376 n.1; *accord Bonta*, 2024 WL 710892, at *7 n.1.

To be sure, *Ross* clarified that the Constitution does not forbid state laws that *directly* regulate only in-state conduct but nonetheless have *indirect* "'extraterritorial effects.'" 598 U.S. at 373. That is why the *Ross* plaintiffs lost: California Prop 12 "does not attempt to impose liability on out-of-state actors for engaging in out-of-state conduct; instead, it regulates in-state actors who engage in in-state conduct (specifically, in-state sales of meat that has been produced in a certain way)." *AAM*

7

*v. Ellison*, 2023 WL 8374586, at *5 (D. Minn. Dec. 4, 2023). This was not disputed; the *Ross* plaintiffs did not even press a direct-regulation claim. Their argument was that even though Prop 12 does *not* directly regulate out-of-state conduct, it will indirectly engender similar real-world effects, as California's sheer size will push out-of-state producers to change their practices. *Ross*, 598 U.S. at 371.

*Ross* rejected that theory, holding that laws that directly regulate only in-state conduct are not unconstitutional unless they are discriminatory or the burdens they impose out of state vastly outweigh their in-state benefits. *Id.* at 371-76. But the Court also cautioned not to misread its decision as "trivializ[ing] the role territory and sovereign boundaries play in our federal system." *Id.* at 375. And one critical role those boundaries play is defining the scope of states' power: A state law that "has only indirect effects on interstate commerce," but does not actually directly regulate conduct out of state, will typically survive scrutiny. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). But state laws that impose liability on out-of-state actors based on their out-of-state conduct—and allow state courts to enjoin out-of-state actions that are lawful where they occur—are categorically different. Such laws defy the bedrock constitutional principle that each state's authority "is not only subordinate to the federal power over interstate commerce, but is also constrained by the need to respect the interests of other States." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) (citation omitted).

8

HB 426 falls decidedly in that latter, impermissible camp. Even if a firearm industry member has no operations or presence in Hawaii, HB 426 allows the AG not only to sue it on the theory that its out-of-state security at its out-of-state facilities is (or its out-of-state agreements with out-of-state distributors are) insufficient, but to enjoin that out-of-state conduct—even if it is fully lawful where it occurs. That is, quite literally, the definition of directly regulating out-of-state conduct.

The AG has previously suggested that Hawaii may permissibly regulate out-of-state conduct so long as it has some connection to or effects in the state. But just as "many (maybe most) state laws have" indirect effects on "extraterritorial behavior," private conduct in State A often has indirect effects in State B given "our interconnected national marketplace." *Ross*, 598 U.S. at 374. Allowing states to directly regulate (and enjoin) out-of-state actors' out-of-state conduct whenever it can be said that it had some in-state effect would allow states to blow past "the territorial limits of state authority under the Constitution." *Id.* at 376 n.1. That is why precedent is clear that the rule against direct regulation of out-of-state conduct applies "whether or not the [out-of-state conduct] has effects within the State." *Bonta*, 2024 WL 710892, at *6 (quoting *Sam Francis*, 784 F.3d at 1323).

For instance, in *Sam Francis*, the en banc Ninth Circuit held "facially" unconstitutional a California law that directly regulated out-of-state transactions, even though the relevant "provision" applied *only* where "the seller resides in

9

California." 784 F.3d at 1322, 1324; *see Bonta*, 2024 WL 710892, at *7.  That was not enough to allow California to regulate "out-of-state sales by California residents," because "wholly out-of-state conduct" is still wholly beyond a state's power to regulate regardless of whose conduct is at issue. *Sam Francis*, 784 F.3d at 1323-24.  Similarly, the Illinois statute in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), applied to tender offers only for corporations that either had their main "office in Illinois" or were "organized under Illinois laws." *Id.* at 642 (plurality).  Yet the Supreme Court found that insufficient to justify Illinois' effort to "directly regulate[] transactions … wholly outside the State." *Id.* at 641; *see also Healy v. Beer Inst.*, 491 U.S. 324, 333 n.9 (1989) (noting that *Edgar*'s plurality "significantly illuminates the contours of the constitutional prohibition on extraterritorial legislation").

Here, too, the meager Hawaii connection HB 426 requires is nowhere near enough.  "*None* of the commercial parties here need a direct [Hawaii] connection.  Under [HB 426], an out-of-state industry member … may be liable for transactions that involve no [Hawaii] parties or destinations" nearly anytime its products wind up in Hawaii. *Bonta*, 2024 WL 710892, at *7.  HB 426's direct "regulation of transactions with such an attenuated connection to [Hawaii] clearly violates" the Constitution. *Ellison*, 2023 WL 8374586, at *4; *accord Ross*, 598 U.S. at 376 n.1.

## CONCLUSION

HB 426 is unconstitutional, and the AG should be enjoined from enforcing it.

DATED: Honolulu, Hawaii, March 15, 2023.

                                         /s/ *Edmund K. Saffery*
                                         EDMUND K. SAFFERY
                                         FOREST B. JENKINS

                                         PAUL D. CLEMENT (*phv*)
                                         ERIN E. MURPHY (*phv*)
                                         MATTHEW D. ROWEN (*phv*)
                                         MARIEL BROOKINS (*phv*)

                                         Attorneys for Plaintiff
                                         NATIONAL SHOOTING SPORTS
                                         FOUNDATION