| | |
|---|---|
| ANNE E. LOPEZ (7609)<br>  Attorney General of Hawaiʻi<br>KALIKOʻONĀLANI D.<br>   FERNANDES (9964)<br>  Solicitor General<br>NICHOLAS M. MCLEAN (10676)<br>  First Deputy Solicitor General<br>Department of the Attorney<br> General, State of Hawaiʻi<br>425 Queen Street<br>Honolulu, Hawaiʻi 96813<br>Tel: (808) 586-1360<br>E-mail: kaliko.d.fernandes@hawaii.gov | ALLA LEFKOWITZ (PHV)<br>Everytown Law<br>P.O. Box 14780<br>Washington, D.C. 20044<br>Telephone: (202) 545-3257<br>Email: alefkowitz@everytown.org<br><br>WILLIAM J. TAYLOR, JR. (PHV)<br>RYAN GERBER (PHV)<br>Everytown Law<br>P.O. Box 4184<br>New York, NY 10017<br>Telephone: (646) 324-8215<br>Email: wtaylor@everytown.org |

*Attorneys for ANNE E. LOPEZ, in her official capacity as*
*Attorney General for the State of Hawaiʻi*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>       Plaintiff,<br><br>v.<br><br>ANNE E. LOPEZ, in her official capacity as Attorney General for the State of Hawaiʻi,<br><br>       Defendant. | Civil No. 1:23-cv-00287-MWJS-RT<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF NO. 38]; CERTIFICATE OF SERVICE**<br><br><u>District Judge:</u><br>Hon. Micah W.J. Smith<br><br><u>Magistrate Judge:</u><br>Hon. Rom Trader<br><br><u>Hearing:</u><br>March 22, 2024 at 10:00 AM |

# **TABLE OF AUTHORITIES**

**Cases**

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta,*
  33 F.4th 1107 (9th Cir. 2022) ..........................................................................9

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ..........................................................................................9

*City of Los Angeles v. Patel,*
  567 U.S. 409 (2015) ........................................................................................11

*CTS Corp. v. Dynamics Corp. of Am.,*
  481 U.S. 69 (1987) ............................................................................................7

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ................................................................................. 6-7, 9

*D.C. v. Beretta, U.S.A., Corp.,*
  872 A.2d 633 (D.C. 2005) ............................................................................7, 8

*Haynie v. Harris,*
  658 F. App'x 834 (9th Cir. 2016) .....................................................................2

*Healy v. Beer Institute,*
  491 U.S. 324 (1989) ......................................................................................5, 6

*Legato Vapors, LLC v. Cook,*
  847 F.3d 825 (7th Cir. 2017) ............................................................................9

*LNS Enterprises LLC v. Cont'l Motors, Inc.,*
  22 F.4th 852 (9th Cir. 2022) ...........................................................................10

*Lopez-Valenzuela v. Arpaio,*
  770 F.3d 772 (9th Cir. 2014) (en banc) .........................................................11

*N. Am. Meat Inst. v. Becerra,*
  825 F. App'x 518 (9th Cir. 2020) .................................................................6, 9

*Nat'l Pork Producers Council v. Ross,*
  6 F.4th 1021 (9th Cir. 2021) .............................................................................6

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ............................................................................................ passim

*New York v. Arm or Ally, LLC*,
  No. 22-cv-6124 (JMF), 2024 WL 756474 (S.D.N.Y. Feb. 23, 2024) .......................7

*NSSF. v. Att'y Gen. of New Jersey*
  80 F.4th 215 (3d Cir. 2023) ......................................................................................4

*NSSF v. Bonta*,
  No. 23-cv-0945, 2024 WL 710892 (S.D. Cal. Feb. 21, 2024) ....................... passim

*NSSF v. Ferguson*,
  No. 23-cv-00113-MKD, 2024 WL 1040673 (E.D. Wash. Mar. 8,
  2024) ....................................................................................................................2, 4

*NSSF v. Raoul*,
  No. 23-cv-02791 (S.D. Ill. Sept. 15, 2023) ..............................................................4

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ..................................................................................7

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) ..................................................................................12

*Sam Francis Foundation v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) (en banc) .................................................................5

*Sylvester v. Admin. Dir. of Cts.*,
  149 Hawai'i 486, 494 P.3d 1219 (2021) ..................................................................5

*United States v. Salerno*,
  481 U.S. 739 (1987) .......................................................................................... 10, 11

*Ward v. United Airlines, Inc.*,
  986 F.3d 1234 (9th Cir. 2021) ..............................................................................6, 9

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) .......................................................................................... 10, 12

**Statutes and Legislative History**

HRS § 134-101 et seq. ................................................................................... *passim*

Cal. Civ. Code § 3273.51 ........................................................................................3

The Attorney General submits this supplemental brief to address the district court decision in *NSSF v. Bonta*, No. 23-cv-0945, 2024 WL 710892 (S.D. Cal. Feb. 21, 2024), and the recently-filed declaration of Anthony Imperato (ECF No. 56).[1]

**1. NSSF lacks standing.** The district court in *Bonta* correctly held that NSSF failed to demonstrate actual injury resulting from AB 1594, the California law at issue. It held that NSSF "identified only theoretical harms, not actual ones." *Bonta*, 2024 WL 710892, at *2. So too here: NSSF has failed to show that its members have changed operations in response to the passage of Act 28 or have suffered any financial loss. Thus, the only way that NSSF could establish standing is to show "imminent injury," by demonstrating, *inter alia*, that its members "have articulated a concrete plan to violate" the law. *Id.* at *2-3. And, like every other court to consider the issue, *Bonta* held that NSSF failed to show imminent injury stemming from the "reasonable controls" provisions. The court explained that "it's uncertain whether [NSSF's] members will disobey the [law's] 'reasonable controls' mandate—far too uncertain to meet Article III's high bar for pre-

---

[1] This brief uses terms as defined in the AG's opposition (ECF No. 38), but citations to Act 28 reflect the Act's codification at HRS § 134-101, *et seq*.

enforcement review." *Id.* at *5.[2] Here, too, NSSF has failed to show a "concrete plan" to violate the Reasonable Controls Provisions in Act 28.[3]

*Bonta* also held that NSSF did show imminent harm with respect to California's "abnormally dangerous" "firearm-related product" provisions because (1) NSSF "members make and sell weapons that are targeted at juveniles," and (2) California's law banned the sale, manufacturing, or marketing of "abnormally dangerous" firearms, which were presumed to include firearms designed for minors. *Bonta*, 2024 WL 710892, at *3; *but see Ferguson*, 2024 WL 1040673 (holding that NSSF lacks standing to challenge similar provisions of WA law). The Attorney General disagrees with this portion of *Bonta* because the mere manufacture, design, or marketing of youth-model firearms is insufficient to establish intent and a plan to violate Act 28's Abnormally Dangerous Provisions. *See* HRS § 134-102(b)(2) (requiring firearm industry members to "[t]ake reasonable precautions" to "not sell, distribute, or provide to a downstream distributor a firearm-related product that is abnormally dangerous and likely to create an unreasonable risk of harm to public health and safety in the State").[4]

---

[2] *Id.* at *4 ("If [NSSF] members mean to violate this law at all, their 'plan' is abstract at best."); *NSSF v. Ferguson*, No. 23-cv-00113-MKD, 2024 WL 1040673, at *4 (E.D. Wash. Mar. 8, 2024) (NSSF failed to show intent to violate law).

[3] Neither a "speculative chain of possibilities" nor "subjective 'chill'" of rights is "an adequate substitute" for standing. *Haynie v. Harris*, 658 F. App'x 834, 836 (9th Cir. 2016) (unpublished; cleaned up).

[4] While California's law expressly prohibits firearm industry members from

Neither of the two declarations included with NSSF's motion identify: (i) which youth-model firearms the companies make; (ii) whether those youth-model firearms are sold in Hawaiʻi; and (iii) whether NSSF's members refuse to implement precautions to not sell them into Hawaiʻi. *See* Decls. of Kevin B. Reid & Susan Cupero (ECF No. 13).[5] This is insufficient.

**2. The Imperato Declaration also fails to establish standing.** NSSF's failure to show standing is not remedied by the addition of the Declaration of Anthony Imperato. ECF No. 56 ("Imperato Decl.").[6] The only assertion about Hawaiʻi is that Henry Repeating Arms "does not have any manufacturing operations" in the state. *Id.* ¶ 6. There is no indication that Henry Repeating Arms' youth-model firearms are (1) sold in Hawaiʻi, (2) that they are regularly used in Hawaiʻi, or (3) that there are any known foreseeable circumstances causing them to end up in Hawaiʻi. This falls short of showing a concrete plan to violate Act 28.

The declaration also says nothing about Henry Repeating Arms' conduct with respect to its sales or distribution practices for its youth-model firearms (or

---

manufacturing, marketing, importing, or offering for wholesale or retail sale an abnormally dangerous firearm-related product likely to create an unreasonable risk of harm to public health and safety in California, Cal. Civ. Code § 3273.51(c), Hawaiʻi's provisions require only that relevant entities take "reasonable precautions" not to sell or distribute such products. HRS § 134-102(b)(2).

[5] Moreover, neither declaration even identifies their firms as NSSF members.

[6] In any event, the declaration should be disregarded as it was improperly introduced for the first time in a reply. *See* LR7.2.

3

any other controls). It does not establish whether it engages in any conduct that may or may not constitute "reasonable precautions to ensure that [it] does not sell, distribute, or provide to a downstream distributor" an "abnormally dangerous" product that is "likely to create an unreasonable risk of harm to public health and safety in the State[.]" HRS § 134-102(b)(2). The declaration "says little about what it plans to do" other than "make, market, and sell guns." *NSSF. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 220 (3d Cir. 2023).[7] Without describing what precautions Henry Repeating Arms does or does not take—and demonstrating how this may create an "unreasonable risk of harm to public health and safety in the State"—there is no factual assertion sufficient to support standing.[8] Moreover, Henry Repeating Arms does not claim to fear enforcement of Act 28. *Compare* Henry Decl. ¶ 20, *NSSF v. Raoul*, No. 3:23-cv-02791 (S.D. Ill. Sept. 15, 2023), Dkt.27-1 ("Henry Repeating Arms faces the prospect of severe liability under HB 218 for the youth-model firearms it manufactures and promotes."). And the unadorned fact that Henry Repeating Arms "manufacturers, markets, and sells long guns specifically designed for minors," Imperato Decl. ¶ 13, is insufficient.[9]

---

[7] *See also Ferguson*, 2024 WL 1040673, at *3 ("The most 'specific' allegation inferable is that its members intend to manufacture, distribute, and sell firearms, ammunition, and related products. This, alone, may justify dismissal for lack of standing[.]" (citations omitted)).

[8] The Imperato Declaration conspicuously does not aver that the company has stopped selling products or is losing sales due to Act 28.

[9] *Bonta* implicitly assumes that the qualifying phrase "who are legally prohibited

4

**3. Contra *Bonta*, Act 28 is not extraterritorial "direct regulation."** To start, *Bonta*'s analysis is premised on language from *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323-24 (9th Cir. 2015) (en banc), that appears to have been abrogated by *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023). *See Bonta* at *6-7 (citing *Sam Francis* for the proposition that the dormant Commerce Clause prohibits "regulating commercial activity that 'takes place wholly outside of the State's borders, whether or not the commerce has effects within the State'"). This language from *Sam Francis* relied, in turn, on *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989). The scope of *Healy* was clarified in *Ross*, 598 U.S. 356 at 371-76, which rejected a reading of *Healy* and similar cases as "forbidding enforcement of state laws that have the 'practical effect of controlling commerce outside the State,'" outside the context of laws that "purposely discriminate against out-of-state economic interests." *Id.* at 371. Thus, *Bonta*'s analysis starts from a mistaken presumption.[10]

---

from accessing firearms" in the California law does not modify the term "minors." 2024 WL 710892, at *3. But it is far from clear that this is how Hawaiʻi courts will ultimately interpret Act 28—and youth are not categorically barred from accessing firearms under Hawaiʻi law. HRS § 134-5(a). No Hawaiʻi court has yet considered this issue. *Cf. Sylvester v. Admin. Dir. of Cts.*, 149 Hawaiʻi 486, 490, 494 P.3d 1219, 1223 (2021) (relying on the series-qualifier canon to interpret a Hawaiʻi statute). This further illustrates the failure to show concrete plans to violate Act 28.

[10] To the extent *Sam Francis*'s ultimate conclusion (that the statute violated the dormant Commerce Clause) survives *Ross*, that conclusion flows from the fact that that the law regulated transactions for products that had never entered California. *Id.* at 1322-23 (describing law as requiring sellers to pay royalty on sales whenever

*Bonta* also relies (at \*7 n.1) on a footnote in *Ross* declining to foreclose challenges against "law[s] that *directly* regulate[] out-of-state transactions by those with *no connection* to the [forum] State." *Ross*, at 356 n.1 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 641-42 (1982). But Ninth Circuit case law explains that "direct regulation" is a narrow concept—not nearly as broad as *Bonta* suggests.[11]

In any event, neither California's nor Hawaiʻi's law is remotely like the law at issue in *Edgar*. There, an Illinois law regulated tender offers when either 10% of shareholders of the target corporation were located in Illinois *or* when two of the following conditions were met: "[1] the corporation has its principal executive office in Illinois, [2] is organized under Illinois laws, or [3] has at least 10% of its stated capital and paid-in surplus represented in Illinois." *Edgar*, 457 U.S. at 642. Thus, "the Act could be applied to regulate a tender offer which *would not affect a*

---

a "seller resides in California"—even where the only connection to the state was the "residency of the seller," and where the work never entered California).

[11] *See, e.g.*, *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1028 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023) ("[T]he extraterritoriality principle is not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices." (quotation omitted)); *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1240 (9th Cir. 2021) ("[T]he extraterritoriality principle derived from the *Healy* line of cases now applies only when state statutes have the practical effect of dictating the price of goods sold out-of-state or tying the price of in-state products to out-of-state prices."); *N. Am. Meat Inst. v. Becerra*, 825 F. App'x 518, 520 (9th Cir. 2020) (unpublished) (district court "did not abuse its discretion in concluding that [the law] does not directly regulate extraterritorial conduct because it is not a price control or price affirmation statute").

*single Illinois shareholder*," and "purport[ed] to regulate directly … commerce wholly outside the State[.]" *Id.* at 642-43 (emphasis added); *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 93 (1987) (clarifying that *Edgar* was limited to purely out-of-state shareholder transactions and upholding an Indiana law that would necessarily "affect a substantial number of Indiana residents, whom Indiana indisputably has an interest in protecting").

Act 28 is completely different. It does not (1) *directly* regulate, nor does it (2) apply to out-of-state commerce with *no connection* to Hawaiʻi. Act 28 creates a "cause of action" for in-state harm. HRS § 134-103(a). It "does not regulate in any direct sense, but instead imposes liability … and it limits that right of action to injuries incurred in" Hawaiʻi. *D.C. v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 656 (D.C. 2005) (en banc) (rejecting dormant Commerce Clause challenge).[12] Act 28 applies to "[a] person who has suffered harm in" Hawaiʻi. HRS § 134-103(b).[13] A state "may regulate with reference to local harms, structuring its internal markets to set incentives for firms to produce less harmful products for sale in [the state]." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1104 (9th Cir. 2013).

---

[12] *See also New York v. Arm or Ally, LLC*, No. 22-cv-6124 (JMF), 2024 WL 756474, at *19 (S.D.N.Y. Feb. 23, 2024) (New York law did not violate dormant Commerce Clause although it "may have some unavoidable repercussions beyond state lines [since] it does not purport to directly control out-of-state commerce" (quotation omitted)).

[13] An action may also be brought "in the name of the people of the State" by certain governmental entities to remedy such harm. HRS § 134-103(c).

7

That Act 28 "may have *effects* outside of [Hawaiʻi] if manufacturers alter their business practices to avoid that liability," *Beretta*, 872 A.2d at 656, is not dispositive under the dormant Commerce Clause. The effects of laws, including "tort laws," do not render them invalid. *See Ross*, 598 U.S. at 374.

Act 28 applies only to commerce that has a connection to Hawaiʻi: It applies if a firearm-related product is intentionally or foreseeably directed into Hawaiʻi. "Firearm-related product" is defined as a firearm (or related product) (1) "sold, made, or distributed in [Hawaiʻi]"; (2) "intended to be sold or distributed in [Hawaiʻi]"; or (3) "possessed in [Hawaiʻi] and it was reasonably foreseeable that the item would be possessed in [Hawaiʻi]." HRS § 134-101. This definition of "Firearm-related product" is then incorporated into numerous other definitional provisions, such as "Firearm industry member," and the operative Reasonable Controls and Abnormally Dangerous Provisions. In addition, the Abnormally Dangerous Provisions only apply to the sale and distribution of firearm-related products that are "likely to create an unreasonable risk of harm to public health and safety in [Hawaiʻi]." HRS § 134-102(b)(2).

While the *Bonta* court (at *7) faulted the California law because it thought "[t]he only in-state link" in the abnormally dangerous provisions "concerns the 'abnormally dangerous' gun itself," that is what permissible regulations on products do—they prohibit certain products within a state, and this is not an

8

impermissible direct restraint. *See Ross*, 598 U.S. at 376; *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta,* 33 F.4th 1107, 1118 (9th Cir. 2022).[14] Any hypothetical risk of an out-of-state defendant with no connection to Hawaiʻi being unreasonably or unfairly haled into a Hawaiʻi court is properly addressed by the limits set by the Due Process Clause on personal jurisdiction.[15] As noted in *Edgar*, "[t]he limits on a State's power to enact substantive legislation are similar to the limits on the jurisdiction of state courts." 457 U.S. at 643.[16]

The hypothetical the court posed in *Bonta* (at *6) is thus inapposite. The court supposed that a Tennessee manufacturer could make an abnormally dangerous product that was then shipped into Arizona, sold to an Arizona buyer, stolen by a third party, driven into California, and used in a crime. *Id.* The court

---

[14] NSSF suggests in its reply that *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017), is relevant. ECF No. 42 at 19-20. But "[t]o the extent the Seventh Circuit's decision in *Legato* [] suggests that the extraterritoriality principle nevertheless prohibits states from regulating production methods, rather than the products themselves, that is not the law of this circuit[.]" *N. Am. Meat Inst. v. Becerra*, 420 F. Supp. 3d 1014, 1032 n.11 (C.D. Cal. 2019), *aff'd*, 825 F. App'x 518 (9th Cir. 2020). And *Ross* makes clear that a state may regulate the method of out-of-state production of a product that ends up in the state. 598 U.S. at 386.

[15] The Department of the Attorney General has no intention of bringing enforcement actions against out-of-state defendants that it determines will be dismissed for lack of personal jurisdiction, further illustrating the lack of standing.

[16] *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985) (out-of-state defendant must have "purposefully directed" its activities at the forum state and litigation must result "from alleged injuries that 'arise out of or relate to' those activities"); *Ward*, 986 F.3d at 1239-41 ("[T]he analysis required under the dormant Commerce Clause largely tracks the analysis that would be required under the Fourteenth Amendment's Due Process Clause").

supposed that both the Arizona dealer and Tennessee manufacturer could face liability under California's AB 1594. *Id.* But this hypothetical assumed (without explanation) that it would be reasonably foreseeable that this gun would end up in California because it was sent to a store in Arizona. It is hard to see why it would be "reasonably foreseeable" to either of the hypothetical defendants at the time they sold the gun that it would end up in California (such that AB 1594 would be implicated in any way), or why a California court would have jurisdiction over either defendant to hear such a suit. *See LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2022) (personal jurisdiction "requires 'something more' than the mere placement of a product into a stream of commerce.").

And *Bonta* plainly errs by holding that California's abnormally dangerous provisions are *facially* unconstitutional under the dormant Commerce Clause. As discussed above, Act 28 is not unconstitutional under the dormant Commerce clause and this facial challenge fails for that reason. But facial challenges are particularly "disfavored" because "they raise the risk of premature interpretation of statutes," "run contrary to … judicial restraint," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented[.]" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (quotation omitted). A facial challenge is thus "the most difficult challenge to mount successfully[.]" *United States v. Salerno*, 481 U.S.

10

739, 745 (1987). *Bonta* states that "*Salerno* is no obstacle to [NSSF's] dormant Commerce Clause claim" because "[s]o long as the statutory language *applied* to analyze that scenario—on its face—offends the Constitution, the law must fall." 2024 WL 710892, at *7-8. This is incorrect.[17] The theory seemingly adopted in *Bonta*—that if a law regulating in-state conduct is also found to regulate some (unspecified) amount of out-of-state conduct, then the law cannot be applied to *anyone*—cannot be squared with *Salerno*. Nor can it be squared with the Supreme Court's admonition that "extreme caution" is warranted before "[p]reventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause[.]" *Ross*, 598 U.S. at 390 (quotation omitted).

In the dormant Commerce Clause context, as elsewhere, "[i]n order to prevail on [a] facial challenge" a challenger "must meet a high burden of proof"

---

[17] The decision in *Bonta* misconstrues the two cases it cites for this proposition. The first case—*City of Los Angeles v. Patel*, 576 U.S. 409 (2015)—merely stands for the proposition that "when assessing whether a statute meets [the *Salerno* in-all-its-applications] standard, the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct." *Id*. at 418. In other words, "[t]he proper focus of the constitutional inquiry [under *Salerno*] is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id*. But that truism has no application here because Act 28 is certainly not "irrelevant" for in-state industry participants. In the second case—*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (en banc)—the court held that a categorical-bail-denial statute was facially unconstitutional because it failed to provide an "individualized determination." *Id*. at 789. But there is no right to an "individualized" determination under the dormant Commerce Clause, rendering *Lopez-Valenzuela* inapposite.

11

and "establish that no set of circumstances exists under which the [law] would be valid." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (quotation omitted). "[T]hat [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* (quotation omitted). "[A] facial challenge must fail where the statute has a 'plainly legitimate sweep.'" *Wash. State Grange*, 552 U.S. at 449.[18]

Even if injunctive relief were warranted (it is not), *Bonta*'s injunction would be overbroad because any injunction must be narrowly tailored to specific applications that Plaintiff shows are unlawful. And even if the Court were to agree with NSSF regarding the constitutionality of one or more of NSSF's highly speculative applications of Act 28, there *still* would be no basis to enjoin the law as applied to, *e.g.*, sales by a company in Hawaiʻi or sales shipped to Hawaiʻi.[19]

/

/

/

---

[18] It is unclear whether NSSF even intends to challenge purely intrastate applications. ECF No. 42 at 18, 20 (urging that Act 28 "facially violates the dormant Commerce Clause as applied to out-of-state sales and other out-of-state conduct" (quotation omitted; cleaned up)).

[19] The need for narrow tailoring is underscored by Act 28's instruction that if any "application" is "held invalid," other applications remain in effect. 2023 Hawaii Laws Act 28, § 2 (H.B. 426). And in the event of a finding of facial or as-applied unconstitutionality with respect to subpart (3) of the definition of "Firearm-related product," that subpart is severable from subparts (1) & (2). HRS § 134-101.

12

DATED:  Honolulu, Hawaiʻi, March 15, 2024.

                          */s/ Nicholas M. McLean*
                          KALIKOʻONĀLANI D. FERNANDES
                            Solicitor General
                          NICHOLAS M. MCLEAN
                            First Deputy Solicitor General
                          ALLA LEFKOWITZ*
                          WILLIAM J. TAYLOR, JR.*
                          RYAN GERBER*
                            Special Deputy Attorneys General
                            *Admitted *Pro Hac Vice*

                          Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as Attorney General